IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROLANDO N. GALLEGO,

                Petitioner,

        vs.

MIKE McDONALD, Warden, High Desert
State Prison,

             Respondent.

No. 2:11-cv-02402-JKS

MEMORANDUM DECISION

      Rolando N. Gallego, a state prisoner appearing *pro se*, filed a Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254. Gallego is currently in the custody of the California

Department of Corrections and Rehabilitation, incarcerated at the High Desert State Prison.

Respondent has answered, and Gallego has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

      Gallego was convicted by a Sacramento County jury of second degree murder (Cal. Penal

Code § 187(a)) with a deadly weapon enhancement (Cal. Penal Code § 12022(b)(1)). In April

2009 the Sacramento County Superior Court sentenced Gallego to an indeterminate prison term

of sixteen years to life. The California Court of Appeal, Third Appellate District, affirmed

Gallego's conviction in a partially published and partially unreported decision,[1] and the

California Supreme Court denied review on March 16, 2011. Gallego timely filed his Petition

for relief in this Court on September 8, 2011. On March 23, 2012, Gallego, appearing *pro se,*

---

[1] *People v. Gallego*, 117 Cal. Rptr.3d 907 (Cal. Ct. App. 2010); Lodged Doc. No. 7
(unreported decision). The Court of Appeal struck a $10,000 parole violation fine and granted
additional presentence credits, but otherwise affirmed Gallego's sentence.

filed an original petition for habeas relief in the California Supreme Court, which was summarily denied without opinion or citation to authority on June 13, 2012.[2]

The facts underlying Gallego's conviction are well known to the parties and are unnecessary to a determination of the issues raised in his Petition. Therefore, they are not repeated herein.

## II. GROUNDS RAISED/DEFENSES

In his Petition Gallego raises five grounds: (1) the use of scientific tests to determine his DNA constituted a violation of his Fourth Amendment search and seizure rights; (2) the trial could erred in (a) refusing to release juror information and (b) ordering the jury to continue deliberations after a second deadlock; (3) the trial court gave conflicting instructions on the evaluation and weight of hearsay evidence; (4) three evidentiary errors were individually and cumulatively prejudicial; and (5) the trial court erred in not applying sentencing statutes that were in effect at the time of Gallego's conviction.[3] Respondent asserts that Gallego's fourth ground, to the extent that it is based upon the trial court's refusal to allow the introduction of evidence that Gallego was willing to take a polygraph examination, is procedurally barred.[4]

---

[2] Case No. S201157, found online at http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2009263&doc_no=S201157 (last reviewed November 6, 2012).

[3] This claim is moot because the California Court of Appeal granted the requested relief.

[4] In his Response, Respondent also contended Gallego's third and fourth grounds are unexhausted because, although they were raised before the California Court of Appeal, those claims were not included in Gallego's petition for review to the California Supreme Court. Subsequently, Respondent acknowledged that Gallego exhausted those claim through the habeas proceeding in the California Supreme Court. Docket No. 17.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[12]  Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.
> Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It goes no farther.*

---

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

By failing to include them in his petition for review to the California Supreme Court, Gallego did not exhaust his third and fourth grounds on direct appeal;[18] however, he did raise

---

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir.2003) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

them in his subsequent original habeas petition.  Although the California Supreme Court could

have denied the habeas petition for failing to raise those issues on direct appeal,[19] it did not.

Consequently, Gallego is not procedurally barred from bringing those claims before this Court.[20]

Also, as Respondent notes, this Court may deny a habeas claim on the merits, the failure to

exhaust notwithstanding.[21]  Therefore, this Court will presume the California Supreme Court

adopted the reasoning of the California Court of Appeal, the last decision that addressed the

claims on the merits, and proceed to address the claims on the merits.

IV.  DISCUSSION

Ground 1:  DNA Test Violated the Fourth Amendment

The detectives investigating the case surreptitiously obtained samples of Gallego's DNA

by following him, then collecting a cigarette butt he had discarded on a public sidewalk.

Gallego's DNA on the cigarette butt matched the male DNA obtained from a blood-stained towel

found at the scene of the crime.  As relevant to this proceeding, Gallego argues that the DNA

testing of the cigarette butt violated his Fourth Amendment right to be free of unreasonable

searches and seizures.  The California Court of Appeal held in the published part of its decision

that Gallego did not have a reasonable expectation of privacy in the DNA testing of the cigarette

---

[19] *See Ex parte Dixon*, 264 P.2d 513, 514 (Cal. 1953).

[20] *See Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case, clearly and expressly states that its judgment rests on a state procedural bar) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989))).

[21] 28 U.S.C. § 2254(b)(2).

butt.[22]

Gallego's Fourth Amendment argument is foreclosed by the Supreme Court decision in *Stone*.[23]   Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[24]   The Ninth Circuit has made it clear that all *Stone* requires is that the State provide a state prisoner a fair and full opportunity to litigate his Fourth Amendment claim.[25]   "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."[26]   California law provides such an opportunity.[27] Gallego is not entitled to relief under his first ground.

Ground 2:  Jury Related Errors

After the jury stated it was deadlocked for the second time late on the third day of deliberations, after declining to declare a mistrial and denying Gallego's request for juror information to show that juror misconduct had occurred, the trial court excused the jury until the following morning.  Gallego contends that the trial court coerced a guilty verdict and abused its discretion in denying a defense petition for juror information to show juror misconduct that

---

[22] *Gallego*, 117 Cal. Rptr.3d at 911-14.

[23] *Stone v. Powell*, 428 U.S. 465 (1976).

[24] *Id.* at 482.

[25] *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

[26] *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

[27] *See* Cal. Penal Code § 1538.5; *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990).

related to that coercion.  The Court of Appeal disagreed.

As summarized by the California Court of Appeal in the unreported part of its decision, the facts underlying Gallego's contention are:

> After 16 days of testimony and arguments, jurors began deliberating on the afternoon of February 11, 2009.  The jurors next deliberated on February 17, all day, and had some testimony read back to them.  On February 18, at noon, the jury stated it believed it was deadlocked.  The foreperson reported an eight-to-four split.  The trial court polled the jurors individually.  Juror No. 5 expressed hesitancy about a deadlock, indicating that he/she wanted to confer with fellow jurors.  The trial court directed the jury to continue deliberating, and the court gave a proper instruction that suggested ways to break impasses (a so-called "dynamite" instruction).  (See *People v. Gainer* (1977) 19 Cal.3d 835, 842, 856; *People v. Moore* (2002) 96 Cal.App.4th 1105, 1118-1120.)  The jury then deliberated for about two more hours that day.
>
> After deliberating all day the next day, February 19, the jury informed the trial court at 4:00 p.m. that it was unable to reach a verdict.  Upon inquiry, the foreperson did not think there was a reasonable probability that a verdict could be reached by deliberating further.  However, the foreperson stated that the jury had taken only one additional ballot that day, after three previous ballots.
>
> When the trial court asked for the numerical breakdown of the last ballot, the foreperson replied "nine [to] three," but two unidentified jurors said "No." The following exchange between the foreperson and the trial court then occurred:
>
> "THE COURT:  Nine to three?  Okay.  So it sound like it's news to the rest of the jury.
>
> "JUROR NO. ELEVEN [Foreperson]:  We took a vote.  Somebody said to me afterward, said they wanted to change their vote, so it was nine [to] three.
>
> "COURT:  Okay.  When did that occur in terms of your coming into this courtroom?
>
> "JUROR NO. ELEVEN:  In the hallway just now.
>
> "THE COURT:  Just now.  Okay.  Then it sounds like, to me—not to be critical—but it sounds like to me that there is some movement, because you said that there's not.  And then just now, coming into court, someone told you that they were changing their vote, which I don't want to judge how you're conducting your deliberations, but . . . because of your statement to me, I think there may be some movement. At least I don't feel I want to do anything other than send you back to deliberate."
>
> The trial court directed the jury to resume deliberations the next morning; and denied [Gallego's] request to poll the jurors individually because the record indicated what had happened.
>
> After resuming deliberations for three hours the next day (Friday, February 20), the jury requested that the following testimony be read back to it:  Detective

8

Lauther's complete first testimony; defense expert Harmor's testimony on validation regarding the new type of human blood test he had used; and testimony from three relatives regarding loans (Tony and Priscila Concepcion, and Primitiva Madayag).

And after deliberating for about two more full days, including the readback of the requested testimony, the jury reached its verdict.

Subsequently, [Gallego] petitioned for the release of jurors' names, addresses and phone numbers based on the reported hallway conversation between the foreperson and another juror. Apparently, the trial court never expressly ruled on that petition, but also never notified the jurors, as it said it would do, if it had granted the petition.[28]

*Coercion*

Taking first the coercion claim. In rejecting it, the California Court of Appeal in the unreported part of its decision held:

A "[trial] court may ask jurors to continue deliberating where, in the exercise of its discretion, it finds a 'reasonable probability' of agreement. [Citations.] Any claim that [a] jury was pressured into reaching a verdict depends on the particular circumstances of the case." (*People v. Pride* (1992) 3 Cal.4th 195, 265, fn. omitted; § 1140.) "The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.'" (*People v. Rodriguez* (1986) 42 Cal.3d 730, 775 (*Rodriguez*).)

Here, the trial was long (16 days of testimony and argument), the case was close, and the most contested issue (the source of the blood on the towel) involved extensive expert testimony. The jury had deliberated for only two full days, which included the readback of testimony from two witnesses, when it "believe[d]" it was first deadlocked at eight to four. And at this point, one of the jurors indicated equivocation and a desire to confer with fellow jurors.

The jury reached its second impasse after only a little more than one full day of additional deliberation. At this point, the foreperson indicated movement in the vote total, to nine to three, because one juror had expressed a change of vote, to the foreperson, upon the jury's filing into the courtroom for the deadlock inquiry.

None of the trial court's comments to the jury was coercive.

Most significantly, after the second deadlock, the jury requested the readback of testimony from five witnesses (not previously requested), and specifically identified the testimony from these witnesses that it was interest[ed] in.

The circumstances of this case are similar to those in *Rodriguez*, *supra*, 42 Cal.3d 730, in which our state high court found no jury coercion. As *Rodriguez*

---

[28] Lodged Doc. No. 7 at 17-19.

concluded: "Here the trial had been long, the evidence voluminous, and the issues complex. . . . Under the circumstances, the trial judge could reasonably conclude that his direction of further deliberations would be perceived as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.  [Citation.] Subsequent events bore out that conclusion, for on the next three days following the jury's final statement of deadlock, it requested, and was read, five portions of testimony that had not previously been read to it during deliberations.  Thus, the deliberations remained 'properly focused on the evidence' [rather than indicating coercion]."  (*Id.* at pp. 775-776.)

As noted, quite similar circumstances are presented here. In fact, the present case can be contrasted with those decisions identified in *Rodriguez* in which coercion was found; in those decision[s], "the trials had been relatively short and the issues relatively simple, so that further deliberations seemed unnecessary for purposes of enabling the jury to understand the evidence and could only be deemed intended to coerce the minority into joining the majority jurors' views of the case." (*Rodriguez*, *supra*, 42 Cal.3d at p. 775, citing *People v. Crossland* (1960) 182 Cal.App.2d 117, 119 and *People v. Crowley* (1950) 101 Cal.App.2d 71, 75; see also *Jiminez v. Myers* (9th Cir. 1993) 40 F.3d 976 [relied upon by defendant in a case where coercion was found; however, at issue in *Jiminez* was only whether the defendant acted with intent to kill when he fired a gun through a door, and both parties conceded it was the kind of case where further deliberations would not be helpful when deadlock occurred—see *Rodriguez v. Marshall* (9th Cir. 1997) 125 F.3d 739, 750-751 [distinguishing *Jiminez* in this fashion], disapproved on different grounds in *Payton v. Woodford* (9th Cir. 2003) 346 F.3d 1204, 1218, fn. 18.)

[Gallego] argues that coercion is shown by the following circumstances: (1) the dynamite instruction given after the first deadlock proved ineffective in preventing the second; (2) the trial court ignored the two unidentified dissident jurors who had said "no" to the question of whether movement in the jury voting had occurred; (3) the trial court approved of secret voting by jurors if such voting indicated movement by minority jurors; (4) the trial court did not want to know why the juror who changed his or her vote in the hallway was unable to do so in front of the other jurors; and (5) the court did not limit the length of resumed deliberations.

We take these five circumstances in order. First, the jury, in this complex case, had deliberated only a little over one full day after being given the dynamite instruction before coming to the second impasse.  Arguably, the fuse of that instruction was still burning at that point.  Second, the trial court did not ignore the two dissident jurors—they expressed their dissent that the vote tally had moved from eight to four to nine to three *before* the foreperson had a chance to explain that trek. Third, the trial court did not approve of secret voting; it was interested only determining if movement had in fact occurred.  Fourth, the hallway/vote-changing juror would have to face the music (i.e., his or her fellow jurors) upon return to the deliberation room.  And, fifth, the jury had not deliberated for very long (a little over

10

three full days, which included extensive readback of testimony) in this complex, close, technical case before reaching the second deadlock; the trial court's failure to set a time limit for further deliberations proved wise given the extensive readback of additional testimony the jury requested after the second impasse.

Under the particular circumstances of this case, we conclude the trial court did not coerce the jury into reaching its verdict.[29]

To the extent that Gallego argues that the trial court violated California law, that argument is beyond the purview of this Court.[30]  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[31]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[32]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[33]  This is especially true where, as here, the highest court in the state has denied review of the lower court's

---

[29] Lodged Doc. No. 7 at 19-23.

[30] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[31] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[32] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

decision.[34]

Clearly established constitutional law provides that "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."[35]  Likewise, it is clearly established that efforts of a trial judge to encourage a deadlocked jury to try to reach a verdict are not *per se* coercive.[36]  However, when faced with a claim of jury coercion, a reviewing court must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'"[37]  "Compliance with *Lowenfield* . . . does not demand a formulary statement that the trial court's actions and inactions were noncoercive 'individually and collectively.'"[38]  Furthermore, clearly established Supreme Court law on the subject of jury coercion in the constitutional context is sparse, consisting solely of *Lowenfield*.[39]  The rule in *Lowenfield* is a general one, broad in scope.  As the Supreme Court has held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision.  *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule

---

[34] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[35] *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).

[36] *Id.* at 237 (citing *Allen v. United States*, 164 U.S. 492 (1896)).

[37] *Id.* (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1975) (per curiam)).

[38] *Early v. Packer*, 537 U.S. 3, 9 (2002) (internal quotation marks and citations omitted) (per curiam).

[39] *See Wong v. Smith*, 131 S. Ct. 10, 11 (2011) (Alito, J., dissenting from the denial of *certiorari*).

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).[40]

Applying these principles, this Court rejects Gallego's position.  Although Gallego challenges the circumstances following the giving of the "dynamite" instruction, not the propriety of giving the charge *per se*, the principles underlying the propriety of giving the "dynamite" charge nonetheless governs the outcome.  Adhering to the guidance in *Lowenfield*, this Court must determine if (1) the California Court of Appeal looked at the totality of the circumstances in determining whether the actions by the trial court were coercive and (2) if its determination that it was not was objectively unreasonable.[41]  As long as the California Court of Appeal reviewed all the facts and circumstances, and considered the supplemental charge, the trial court's post-charge actions in context in holding that it was not coercive, then, in the absence of Supreme Court authority to the contrary, this Court must give deference to the California Court of Appeal's judgment.[42]

Generally, in reviewing whether a jury has been coerced the court weighs four factors:

---

[40] *Richter*, 131 S. Ct. at 786; *see Renico v. Lett*, 130 S. Ct. 1855, 1859 (2010) ("[T]he more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations.") (internal quotation marks omitted)).

[41] *See Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011).

[42] *See Id.* (citing *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (noting that the 28 U.S.C. § 2254(d) is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citations and internal quotations omitted) (per curiam)).

(1) the form of the jury charge given, (2) the amount of time of deliberation following the charge,

(3) the total time of deliberation and, (4) other indicia of coerciveness or pressure.[43]  As he did on

direct appeal, Gallego's argument focuses on the fourth element:

> On the second occasion that the jury deadlocked, the defense request that the jurors be individually examined was denied, even though two unidentified jurors had protested the accuracy of the foreperson's representations.  The defense also moved for a mistrial.  Thus, the defense objected to the trial court directing further deliberations.  The trial court's sole justification for ordering further deliberations after a second declaration of a deadlock was its **perception** that the split had changed from 8-4 to 9-3 after the giving of the firecracker instruction, such that the jury was moving toward consensus.  See 1 ORT 2893-99.  However, during the inquiry of the foreperson, the trial court was given indications that the change in vote was a **surprise** to most of the jurors.  If that was true, then the trial court's justification for ordering resumption of deliberations after the second deadlock was without justification.[44]

As the California Court of Appeal explained in addressing Gallego's contentions on

direct appeal, after the "objections" the trial court inquired further of the foreperson who

explained that the vote change occurred in the hallway.  Thus, it cannot be said that the trial court

ignored the "objections" or that the trial court was unjustified in finding movement.  Applying

*Richter-Renico* to the rule in *Lowenfield*, under all of the facts and circumstances in this case this

Court cannot say that the decision of California Court of Appeal rejecting Gallego's jury

coercion claim was "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" at the time the state court

rendered its decision or "was based on an unreasonable determination of the facts in light of the

---

[43] *Weaver v. Thompson*, 197 F.3d 359, 366 (9th Cir. 1999).

[44] Docket No. 1 at 65-66 (bold print in the original).

evidence presented in the State court proceeding."[45]

*Failure to Release Jurors' Information*

The California Court of Appeal rejected Gallego's arguments on the failure to release the

jurors' names, addresses and phone numbers as well.

> [Gallego] contends the trial court abused its discretion in denying his petition for the release of the jurors' names, addresses and phone numbers. This petition was based on the reported hallway conversation, set forth above, between the jury foreperson and the juror who changed his or her vote just after the second deadlock. [Gallego] claims this conversation evidenced juror misconduct (i.e., discussing the case outside the presence of the other jurors), and the release of this information would have assisted him in making his coercion argument. We find no abuse of discretion.
>
> Assuming [Gallego] has not forfeited this contention by failing to obtain an express ruling on his petition (as noted previously at p. 19, *ante*), we reject the contention on its merits.
>
> As implied above, a trial court's denial of a petition for disclosure of juror identifying information is reviewed for abuse of discretion. (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1094, 1096.) A defendant is entitled to juror identifying information only if he "sets forth a sufficient showing to support a reasonable belief [(1)] that jury misconduct occurred, [(2)] that diligent efforts were made to contact the jurors through other means, and [(3)] that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 552; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 990; Code Civ. Proc., §§ 237, subd. (a)(2), 206, subd. (g).)
>
> [Gallego's] claim is most prominently tripped up by factor (3). As the People persuasively argue, "absent some reason to believe that the verdict was influenced by the reported hallway communication [and no such reason was ever posited, because the circumstances show that only a vote change was uttered in the hallway rather than any substantive discussion of issues, and the jurors subsequently resumed deliberations that were focused on the evidence and that confronted the vote-changing juror], the trial court already had all the information it needed to evaluate the alleged juror misconduct based on the comments of the foreperson. . . . Moreover, since none of the other jurors were privy to the conversation, giving [Gallego] identifying information on those jurors would have invited a 'fishing expedition' by defense counsel hoping to upset the verdict."
>
> [Gallego] counters by noting that the "burning question in this case is why the

---

[45] 28 U.S.C. § 2254(d).

unidentified juror who whispered a vote change to the foreperson in the hallway was unable to convey his or her vote in the presence of the remaining jurors. . . .  [This showed] a reasonable likelihood that the jury contained a biased member."  As just alluded to, however, the hallway/vote changing juror had to face his or her fellow jurors when the trial court directed the jury to continue deliberating (after this hallway remark was reported).  And facing those other jurors, this juror had to explain the vote change to them; this was done, moreover, in a crucible which showed the jury was focused on the evidence (requesting an extensive readback of testimony from five significant witnesses).

Combining these reasons with those set forth in the previous subheading (Coercion), we also conclude the trial court did not abuse its discretion in denying the petition for juror identifying information to help with [Gallego's] coercion argument.[46]

The error complained of is based upon matters that occurred during jury deliberations.

There is no allegation that the jury, or any juror, was influenced by an external factor.  Nor, is there any allegation or evidence that the jury's verdict was the result of any prosecutorial misconduct.  The decision of the California Court of Appeal not only was not contrary to established federal law as determined by the Supreme Court, it was consistent with it.  Under Federal law, the inquiry into the validity of a verdict is severely circumscribed.

Inquiry into validity of verdict or indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.[47]

"Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission

---

[46] Lodged Doc. No. 7 at 19-25.

[47] Fed. R. Evid. 606(b).

of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences."[48]  As the Supreme Court has noted:

> By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict. See 8 J. Wigmore, Evidence § 2352, pp. 696-697 (J. McNaughton rev. ed. 1961) (common-law rule, originating from 1785 opinion of Lord Mansfield, "came to receive in the United States an adherence almost unquestioned").
>
> Exceptions to the common-law rule were recognized only in situations in which an "extraneous influence," *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), was alleged to have affected the jury.  In *Mattox,* this Court held admissible the testimony of jurors describing how they heard and read prejudicial information not admitted into evidence.  The Court allowed juror testimony on influence by outsiders in *Parker v. Gladden,* 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (bailiff's comments on defendant), and *Remmer v. United States,* 347 U.S. 227, 228-230, 74 S.Ct. 450, 450-452, 98 L.Ed. 654 (1954) (bribe offered to juror).  See also *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (juror in criminal trial had submitted an application for employment at the District Attorney's office).  In situations that did not fall into this exception for external influence, however, the Court adhered to the common-law rule against admitting juror testimony to impeach a verdict. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Hyde v. United States,* 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114 (1912).[49]

In this case, Gallego does not allege any external influence.  The Supreme Court has never held that the refusal of a trial court to permit inquiry into the jury's deliberative process violated a criminal defendant's rights to a jury trial under the Sixth Amendment.  Indeed, because the Federal Rules of Evidence, which are adopted by the Supreme Court,[50] preclude consideration of a juror's mental processes, any assumption that the Supreme Court did is

---

[48] *Tanner v. United States*, 483 U.S. 107, 121 (1987).

[49] *Id.* at 117.

[50] 28 U.S.C. § 2072(a).

counter-intuitive.  Any rights that Gallego had on this issue arose under California state law,[51]

which differs substantially from federal law.  That is, although it is permissible to challenge a

jury verdict on the basis of internal factors under California law, it is impermissible under federal

law.  As a right created by state law, whether the state courts properly interpreted or applied that

law is beyond the purview of this Court in a federal habeas proceeding.[52]  "[The Supreme Court

has] long recognized that a mere error of state law is not a denial of due process."[53]  "Federal

courts hold no supervisory authority over state judicial proceedings and may intervene only to

correct wrongs of constitutional dimension."[54]  Gallegos has failed to present a question of

constitutional dimension, and is, therefore, not entitled to relief under his second ground.

Ground 3:  Jury Instructions

This ground involves Gallego's unrecorded allegedly false statement made to a detective

that he was at work on the night that the murder allegedly occurred.  Gallegos argues that the trial

court gave two conflicting instructions concerning this statement.  The California Court of

Appeal rejected Gallego's argument.

> The first instruction was CALCRIM No. 358, stating:  "You have heard
> evidence that the defendant made oral statements before the trial.  You must decide
> whether or not the defendant made any of those statements in whole or in part.  If you
> decide that the defendant made such statements, consider the statements along with

---

[51] Cal. Evid. Code § 1051(a).

[52] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no
federal concern whether state law was correctly applied).

[53] *Id.* (internal quotation marks and citations omitted).

[54] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (quoting *Smith v. Philips*, 455 U.S. 209,
221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86
(1983) (per curiam).

all of the other evidence in reaching your verdict.  It is up to you to decide how much importance to give such statements.  [¶]  Consider with caution any statement made by the defendant tending to show his guilt unless it was written or otherwise recorded.

      The second instruction was from CALCRIM No. 362, modified to include a reference to the alleged statement to Detective Lauter.  The instruction read:  "If you find that the defendant made a false or misleading statement relating to the charged crime, to wit: to Detective Lauther, regarding having been at work, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.  [¶]  If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

      [Gallego argues that a reasonable juror would have understood the first instruction to be a general statement of the law, and the second to be a specific statement of how the law should apply to the facts of this case; such an understanding, [Gallego] asserts, deprived him of the benefit of the first instruction's "consider with caution" admonition.

      In evaluating purportedly ambiguous instructions, we ask whether there was a "reasonable likelihood" the jury misunderstood or misapplied the instructions. (*People v. Clair* (1992) 2 Cal.4th 629, 662-663.)  We do not think so here.

      In considering the instructions as a whole, as the jury was also instructed to do, the jury would have concluded that the first instruction applied to all unrecorded, oral statements made by [Gallego] -- including his statement to Detective Lauther regarding having been at work on the night of August 29, 1991.[55]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[56]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[57]  This Court must also assume in the absence of evidence to the

---

[55] Lodged Doc. No. 7 at 26-27.

[56] *Boyde v. California,* 494 U.S. 370, 380 (1990).

[57] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

contrary that the jury followed those instructions.[58]  As the Supreme Court has stated:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct., 1702, ----, 95 L.Ed.2d 176 (1987), and a strong likelihood that the effect of the evidence would be "devastating" to the defendant, *Bruton v. United States,* 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968).[59]

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[60]  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[61]  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[62]

It is clear that the California Court of Appeal applied the appropriate standard.  Under the circumstances present in this case, this Court cannot say that in applying that standard to the challenged instructions in this case the California Court of Appeal was not only not erroneous,

---

[58] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Franklin*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

[59] *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

[60] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[61] *Id*. at 72-73.

[62] *Id*.

but also not objectively unreasonable.[63]   Gallego is not entitled to relief under his third ground.

Ground 4:  Evidentiary Rulings

Gallego challenges three evidentiary rulings:  (1) an alleged improper application of the "state-of-mind" exception for the introduction of hearsay evidence; (2) the introduction of the victim's alleged appointment book without a proper foundation;[64] and (3) exclusion of evidence that Gallego was willing to take a polygraph examination.  Gallego further argues that the evidentiary errors, even if not individually prejudicial, are prejudicial when considered cumulatively.  The California Court of Appeal disagreed.

"*State-of-mind*" *Hearsay Exception*

Gallego contends that the trial court erroneously allowed the prosecution, over his objection, to elicit evidence of conversations between a detective and a hearsay declarant under a "state of mind" exception.  The California Court of Appeal rejected Gallego's argument:

> First, [Gallego] claims the trial court erroneously admitted a hearsay statement from his employer to Detective Lauther under the "state of mind" hearsay exception.  [Gallego] is mistaken.
> During the prosecution's case, Detective Lauther testified that after [Gallego] told him he was at work (on the night of August 29, 1991), Lauther asked the employer if [Gallego] was at work that night; Lauther "receive[d] a response" from the employer, and decided to contact [Gallego] again.  When the prosecutor asked

---

[63] *Wiggins*, 539 U.S. at 520-21.

[64] Gallego, acknowledging that it was unsupported factually, withdrew this claim on direct appeal.  Appellant's Reply Brief, Lodged Doc. No. 3 at 33.  The California Court of Appeal, noting its withdrawal, did not address it.  Lodged Doc. No. 7 at 27.  Gallego has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  Thus, this Court cannot say that the decision of the California court "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1).

21

Lauther "why" he had decided to do so, defense counsel unsuccessfully objected on "relevance" grounds.

This evidence was not admitted for the truth of the employer's response, but only to show why Lauther decided to contact [Gallego] again; the jury was so instructed (and immediately after this, Lauther testified that he contacted [Gallego] again because [Gallego] said he was at work and the employer said not so).

Consequently, the employer's statement was not offered for the hearsay purpose of the truth of the matter stated; the "state of mind" hearsay exception therefore did not apply. (Evid. Code, § 1250.) In any event, the defense objected to this statement on grounds of "relevance" rather than hearsay. (See Evid. Code, § 353 [to preserve review, specific ground of objection must be stated].).[65]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[66] "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[67] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[68] In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[69] The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the

---

[65] Lodged Document No. 7 at 27-28.

[66] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[67] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[68] *McGuire*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[69] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

admissibility of evidence.[70]

No court, let alone the United States Supreme Court, has ever held that the hearsay rule was mandated by the Constitution of the United States other than to the extent it violated the confrontation clause of the Sixth Amendment.  Gallego's reliance on *Crawford* is misplaced as the Supreme Court specifically noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[71] The jury was properly instructed on the restrictions on the use of the testimony.  This Court assumes that the jury followed those instructions.[72]  Gallego is not entitled to relief on this basis.

*Exclusion of Willingness to take a Polygraph Examination*

Gallegos also contends that the trial court erred in not allowing him to enter evidence that he had offered to take a polygraph examination in 1991 to rebut evidence that he had lied to detective Lauther.  The California Court of Appeal rejected Gallego's arguments:

> Second, [Gallego] contends that the trial court violated due process by refusing to allow evidence that he had offered to take a polygraph examination in 1991, to rebut the prosecution's evidence of consciousness of guilt (i.e., [Gallego's] supposed lie to Detective Lauther).
> [Gallego] has forfeited this contention by agreeing at trial with the prosecution and the trial court that he could present evidence of his cooperation with the police, but not offers to take a polygraph examination (Evid. Code § 351.1, subd. (a) [precluding such polygraph evidence]).[73]

---

[70] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly*, 416 U.S. at 643).

[71] *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

[72] *Weeks*, 528 U.S. at 234 (2000).

[73] Lodged Doc. No. 7 at 28.

Respondent contends that Gallego is procedurally barred from bring this claim.  This Court agrees.  A federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a ground that is independent of the federal question and adequate to support the judgment."[74]  "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."[75]  Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case, clearly and expressly states that its judgment rests on a state procedural bar.[76]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[77]  A discretionary state procedural rule can be firmly established and regularly followed, so as to bar federal habeas review, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.[78]

Although the ultimate burden of proving adequacy of a state procedural bar is on the Respondent, once Respondent has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts

---

[74] *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

[75] *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).

[76] *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)).

[77] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[78] *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011); *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009).

24

to the petitioner."[79]  Gallego may satisfy his burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[80]  In his Traverse, Gallego did not address the procedural default issue.  Consequently, Gallego has not shouldered that burden.

Because Gallego's claims were defaulted in state court on an adequate and independent state ground, they will not be considered in federal habeas proceedings unless Gallego can demonstrate cause for the default and actual prejudice, i.e., a miscarriage of justice.[81]  To prove a fundamental miscarriage of justice, Gallago must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[82]  Although at the gateway stage the petitioner need not establish his innocence as an "absolute certainty," Gallego must demonstrate that more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[83]

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).  An objective factor outside

---

[79] *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

[80] *Id.*

[81] *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[82] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[83] *House v. Bell*, 547 U.S. 518, 538 (2006).

of a petitioner's control (e.g., ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer,* 505 U.S. at 339, 112 S.Ct. 2514 (quotation marks omitted).[84]

Because Gallego did not address the issue in his Traverse, it is manifestly clear that he has not cleared the "factual innocence" hurdle either.

Even if the Court were to reach Gallego's claim on the merits, he would not prevail. Although there is pre-AEDPA circuit authority to support his position,[85] the Supreme Court has declined to hold that a criminal defendant has a constitutional right to take a polygraph test or, if administered, to have the results of a polygraph test admitted into evidence.[86] Gallego is not entitled to relief under his fourth ground.

---

[84] *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

[85] *See, e.g., McMorris v. Israel*, 643 F.2d 458 (7th Cir. 1981).

[86] *See United States v. Scheffer*, 523 U.S. 303, 309-12 (1998); *see also Israel v. McMorris*, 455 U.S. 967, 969-71 (1982) (Rehnquist, J., dissenting from denial of *certiorari*) (noting the split between the Seventh Circuit in *Israel* and the opposite conclusion of the Fourth and Eighth Circuits in *Milano v. Garrison*, 677 F.2d 374 (4th Cir. 1981) and *Connor v. Auger*, 595 F.2d 407 (8th Cir. 1979))). This Court's research indicates that neither the Fourth nor the Eighth Circuit has receded from its position that a defendant's constitutional right to a fair trial is not infringed when the prosecutor refuses to stipulate to the admissibility of polygraph results. In addition, in *Israel* the Seventh Circuit noted that its decision did not preclude a state, as has California, from absolutely refusing to admit polygraph evidence. 643 F.2d at 466.

## V.  CONCLUSION AND ORDER

Gallego is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[87]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[88]

The Clerk of the Court is to enter judgment accordingly.

Dated:  November 20, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[87] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v Cockrell*, 537 U.S. 322, 327 (2003))).

[88] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.